The CFC erred in this case in concluding that the Task Order Bar prohibited the consideration of the merits of precipitous protests. The Task Order Bar applies to protests in connection with the issuance or proposed issuance of a task or delivery order. Our protest is not in connection with the issuance or proposed issuance of a task order or delivery order. We do not challenge a task or delivery order, we do not seek to set aside a task or delivery order that's been issued, we do not challenge an action that directly or immediately led to a task or delivery order, and we do not challenge an action on which the validity of a task or delivery order depends, such as what was at issue in SRA. But you do challenge actions that resulted from the issuance? Actually I don't even, that's sort of but-for causation standard, Your Honor, I don't even know that that's the case. Well, would CAFI have taken any action in connection with this contract absent the task order? Normally, of course, Your Honor, an IDIQ task order contract involves task orders, but as a basic matter, there still would have been a contract that obligated them to deliver a system. But even if Your Honor concluded... I mean, a task order is like the notice to proceed in this particular contract, because a good task order was created before but issued in connection with. I think that's fair to say, Your Honor, and I think that even if Your Honor concluded that it would not affect our argument. I mean, your argument is that in connection with doesn't include results from? In connection with the issuance or proposed issuance, does not include but-for, does not include. As a result of, right? Just in terms of the construction of the law. That's absolutely correct. And so this causal language from SRA, is that the case? Yes. Is about causing the issuance, not caused by the issuance. That's correct. It's only one direction of the cause.  It's directly or immediately caused by the issuance. Right, right. But the crucial point for your purposes is it's not stuff caused by the task order. That's correct. Actions preceding. Yes. Do you challenge any action or failure to act preceding the issuance of the task order? No, we do not. I thought there was some language maybe in your complaint that suggests you do. No? There may be an allusion in our complaint to the fact that they didn't conduct sufficient market research even prior. But our complaint, our claims don't depend on that. You cite that portion of, in count two, you cite that portion of the statute, 3453. But you're not asserting that that, you're not complaining about that? No, that doesn't give any independent heft to the claims. Our claims don't depend on that provision. I don't believe the government challenges you on that point. I mean, you can't agree that your claim is based on activity that occurred after the issuance. That's correct. I think they can speak for themselves, but that's my understanding. Well, are you having drawn the line of in connection with as after and not before you carefully drew your complaint? I understand that. Yes, yes. And again, it's even more attenuated here because even if you concluded that, even if you envisioned that a task order that directly or immediately caused something, maybe that would be a protest here. It's not even that. Your position on this point walks you into the government's argument that your basic beef is about performance of a contract and that's a CDA claim and blah, blah, blah, right? Well, I mean, they certainly say that. Your argument that this basically is not a problem with the solicitation is not a problem with the issuance of the task order, its conduct afterwards. And the government says, oh, well, that's what CDA takes care of that type of problem? That's correct. And that's an incorrect argument, but that is what they say. I think I remember this right. Your answer to that is whatever the CDA takes care of, it doesn't take care of anything that's not on behalf of one of the contracting parties. That's absolutely correct. Here we're not challenging a breach of contract. We're challenging a breach of statutory obligations that apply to post-award. So as long as we are moving between statutory provisions, can we talk about 1491? Absolutely. So is your position about the very last clause there, interested party complaining of statutory or regulatory error in connection with a procurement, would that allow any putative supplier to awardee to make a challenge to an award? No. No, you're right. Why not? Because our claim depends on a type of statutory provision that is pretty unique in bid protest. The 3453. Correct. How do you tie the interested party language or any other language in 1491 to the particulars of another statutory regime? Well, the interested party language has always just meant that you have a competitive interest if the government complies with the law, that direct economic interest if the government complies with the law. So where's the authority for that? I thought that at least since Weeks Marine and the predecessor case, we at least said that you have to have been somebody who did bid or would have bid for the contract. Well, we would have bid if the government complied with the law. If the government conducted a commercial item procurement as they were supposed to. I'm sorry, at the initial local contract? No. This statute is unique, Your Honor, in that it imposes pre-award obligations and post-award obligations. The post-award obligation says that the government, to the maximum extent practical, must ensure that its contractors procure commercial items to the maximum extent practical. Now, it can comply with that obligation and that they conduct adequate market research prior to supplying goods to the government. Now, had the government done what they were supposed to do here, we would have been a commercial item supplier. We have a commercial item that can meet all of the CD system requirements. All right, so at least the way I think that the Court of Claims analyzed this 1491 issue was to say that there was an exception here to the usual Weeks Marine rule. Just correct me if I'm wrong in what I'm saying, when I'm done saying it. The exception to the usual rule, you have to be an actual or basically likely bidder. And I think I just heard you maybe say, we don't really need an exception here. Just focus on the right bidding process, which is the post-task order bidding process for supplies. I think that's right, Your Honor. So if that's right, at least it would fit within Weeks Marine maybe. Why would that not open up 1491 to any putative desired supplier to a contractor? Well, Your Honor, because for the most part, there aren't these obligations that apply post-award. I mean, for all we know, the 3453 is unique in this respect. And so it's not going to open up a floodgate of other challenges that could possibly exist. What do you mean that it applies to every contractor? Oh, if Your Honor is asking what could be brought under Section 3453, is that the question? My concern is that if you're right, then any person in your position who can make a privilege case or show non-privilege showing that we have the product that you could use in connection with performing this contract, and you have the duty to do it, and you have the standing to bring that argument, then anybody who is supplying software can make that argument in any contract. Yes, Your Honor. I mean, of course, the contours, as Your Honor is alluding. Just take the Defense Department, for example. Almost every contract that they issue, the person who said, well, I can't actually bid on the whole contract because the contract requires five, six, seven different parts, and I'm a supplier for one part. I do absolutely understand Your Honor's question. Any person who has that capacity to supply that one part can intervene and protest and claim there was outstanding to say there was a violation of law. Yeah. Theoretically, Your Honor, of course, all of this is bound by what is practical. As Your Honor assumed there in your hypothetical prima facie non-frivolous case that the government was violating the law. It seemed to me on the standing issue that your client couldn't very say that you were a victim. On the original contract. On the original contract. Correct. And the original contract is being performed on a task order that you issued together. Yes. They were within one. They were attached. I suppose the team was on the software stuff that you were dealing with. But the contract, you couldn't bid on the whole contract. That's correct. And you couldn't be a prospective bidder on the whole process, same reason. On the whole contract. Correct. On the whole contract. Right. Yes. And so if you were sort of looking at this as, I think, Judge Bruggen won't want to look at you, then it looks like you're out. Because if you can't be a prospective bidder, then you can't even show that you have a relevant economic heart. Well, no. Actually, Judge Bruggen agreed with me. He says that's the normal test. But then he says that rule is anything but absolute. Yes. Because he looks at a couple of cases where he finds exceptions. About five or six, yes. And the clearest exception is Secury. Yes. Because that didn't follow the whole set of rules, right? Correct. So he says, well, I'm going to say that I'm going to treat this as not covered by the basic rule. That's correct. And what was his rationale? Because 133453 is some special thing? I think his rationale was just the plain language of Section 1491 that says that an action in connection with a violation of a statute or regulation, which this clearly is, is covered. The court has jurisdiction over it. But your Honor is correct that he said that. And I think that's why. And then also in terms of interest of party. If we find that your client has standing, then presumably every person who is supplying your competitors who might come forward and argue that they have a software package that is close to or could be modified for use without, you know, totally reinventing the wheel, they would all have standing as well. If there's a competitor who offers a product that meets the CD system requirements, absolutely. So if you took it over into the setting of a contract for building a warehouse or something, everybody who has lumber that would qualify for, you know, this contract says we need so many linear feet of wood of this particular kind. Anybody who can supply that would have standing. Well, it's not clear to me. Assuming they have a violation of law in their mind that they want to proceed with. Assuming that there's an independent statutory or regulatory provision that applies post-award. There has to be a violation of law to trigger 1490 to the third problem. Yes. But those are, but again, statutory or regulatory violations or provisions that apply post-award are rare. Well, I mean, you take, if you look at, we know how government contracts work and we know about all of the rules and regulations encapsulated in regulations under contract. So anybody who's going to supply lumber who looked, for example, at the issue could say, I think there's been a violation of this regulation in connection with the task force or with the contract. Yes. If there is a statute. Any type of violation they could find. That applies post-award. The plain language of 1491b1 says if they're really challenging a direct statutory in which they have a direct economic interest and are an interested party and it applies post-award. Then yes. Theoretically, yes. I think you're agreeing that any supplier person who has the capacity to supply an element that's involved in a contract for which they could not be a bidder or a prospective bidder will still have standing to vindicate a violation of law. I think so, Your Honor. I think as Your Honor has phrased that, I think so. Across the whole panorama of federal government contracting. Yes, this court has defined procurement quite broadly. They have. And therefore, your jurisdiction is quite broad. If somebody can show a direct economic interest, a direct competitive interest in a statutory or regulatory violation that applies post-award, plain language of 1491b1 would give the court jurisdiction for sure. Yes. But again. So is your argument basically that when you look at 1491, you see that there are basically three prongs, which we talked about in the earlier cases. The first prong is the solicitation. You've got an argument under the solicitation. And it doesn't say a violation of law in connection with the solicitation. It just says you have a protest about the solicitation. That's prong one. Prong two is the award proposed. And so our body of law where we have developed the are you a bidder, prospective bidder, yada, yada, seems to have been developed with regard to prongs one and two. Is it your argument that prong three deserves a different standing test? I don't think it's a different standing test, Your Honor. I think that in the end. That you don't apply. You don't apply the standing test for prongs one and two.  Because if we apply them, you're out of luck. Yeah, I guess so, Your Honor, in the sense that those. But again, Judge Brugink recognizes that the requirement that you be a bidder is or an actual bidder on the original contract. If you've been prevented from even having a competitive process in which you could have been a bidder and would have been a bidder. That's by definition the problem any supplier faces who can't meet the full terms of a request for proposal. That's right. Ever. That's correct. And that's why there's a third prong. Or, I mean, that's what the third prong adds. Otherwise, the third prong really wouldn't add much to the first two prongs. So we focused most of the argument on the in connection with the procurement provision. And I think the court understands. The court is well articulated. But our argument with respect to the issuance of a task order in which Judge Brugink actually ruled. But I do want to point out just a couple of things, additional things in connection. You're already over your time. Oh, that's fine. And you've used your rebuttal time. So why don't you just say rebuttal? Will do so, Your Honor. Thank you. Yes, please. Good morning. May it please the court. I'd like to focus. Well, I'll focus wherever the court directs me. But the first point I'd like to make is that these arguments that are at issue here, the question of whether this is in connection with a procurement, whether this is in connection with the issuance or proposed issuance of a task order, and the interest of party question are very interrelated. And they have come about, I think, in large part because of an effort to identify exactly how Percipient is characterizing these claims. So taking what Percipient has said latest here today, and in particular in this reply brief, Percipient has now made very clear they are challenging contract performance. And this procurement is being, according to Percipient, handled contrary to law. And just to be clear, by contract performance, you are including the actions of both sides of the contract, not just the contractor. I think Percipient's allegations encompass. They see you. They haven't seen CACI. That's right, Your Honor. And I hesitate to go too far into that because I think we get into some merits factual issues there and that our argument would be that their beef is really with CACI. But the complaint certainly addresses allegations in terms of what we have described as CACI's performance of the contract and NGA's administration of that performance. Where is this argument going? Is this an argument that the CDA is the proper way to deal with this sort of thing? Well, I can start there if you'd like, Your Honor. I think the point that I'm trying to make is if we are talking about the SAFIRE procurement and the actual activity that is being protested is how CACI and NGA are carrying out Task Order 1, that that activity has to be in connection with Task Order 1, with the issuance of Task Order 1. You just changed the statutory language. I did, and I apologize, Your Honor. I shorthanded it. But the statute doesn't preclude everything, that review of everything that's in connection with the task order. It doesn't, Your Honor. But this court has said that in connection with, I'll start with in connection with, is a direct and causal relationship to the issuance of the task order. Just to be clear, I guess I just can't get over what to me is just the blindingly obvious point that the direct connection was about what directly leads to the task order, not what follows from the issuance of the task order. That was the context in which that language was used. Was it SRA that it was used in? Yes, Your Honor. SRA was what happened. No case says that everything that follows from the existence of a task order, namely its implementation, is somehow an attack on the issuance of the task order. Two quick points with that, Your Honor. First of all, I don't know that it's ever been addressed. I don't think there has ever been a question, aside from cases that actually involve occurrences after a task order's issuance, like 22nd Century, cases involving waiver. I mean, 22nd Century and SRA are both instances of activities that are being challenged post-award of a task order. In both of those cases, isn't it true that the plaintiff in both of those cases was saying, hey, that task order should have been issued to me, right? They were complaining about who it was issued to, who the task order was issued to. The remedy that they were seeking in both of those cases was to be awarded the task order, right? I think that's the remedy they were seeking, Your Honor, but the procurement activity, the acquisition activity they were complaining about, and one was an OCI waiver that took place a month after. Sure, 102 days or something after the task order. And then the other was an SBA determination that took place, again, after the task order. But don't we have to read both of those cases, bearing in mind what the remedy was that was being sought there? Shouldn't the language in that case, for example, the broad language in SRA, be read in the context of the facts in front of the court? I think certainly the remedy is a relevant question, and I think the court has said that. It was cited as being a reason for why they concluded that it was in connection with the issuance of the task order. And, Your Honor, I think that's true in this case as well. The remedy that the recipient is seeking here is effectively undoing the activities of the task order. Undoing the what? The activities that have taken place under the task order. When does this phrase, activities, come into the statute? Oh, it's not in the statute. Sorry, that's my characterization of what... Correct, but that still doesn't make it a remedy to undo the issuance of the task order. Everybody seems to agree that the task order was just fine, in part because the government said, we will make sure CASI, CHCI does what it needs to do under 3453. You know, to basically go to Best Buy, you know, do off-the-shelf commercial stuff if it's useful. So there's been no violation, and no change in the task order needs to be made to comply with what they assert to be the duties that have not been complied with. I understand what you're saying, Your Honor. I respectfully suggest that there has been no... None of the cases that have discussed this issue have included that directional element that, you know, the activity that has to be complained of leads up to the task order. It's a direct and causal connection to that issuance. And the issuance of a task order directly and causally leads to its performance. You keep telling us there aren't any cases. We know there aren't any cases. There are a bunch of cases in the court of claims. There's no question about that. So what the presiding judge's question to you was, what's wrong with an interpretation in connection with the issuance that means directly leads to, not what follows? Respectfully, Your Honor, I just want to... It's just a case of first impression. It is. What's wrong with that interpretation? I think this is getting back to my original point of the interconnectedness, Your Honor. Your job, ma'am, is not to tell us that there aren't any cases and that there's a first impression. You used up most of your argument to get right here. And the presiding judge put the question straight to you and said, we have to decide what in connection with the issuance means. And he said, maybe when you look at SRA, it was in connection with building up to and before the issuance. What's wrong with a definition that says it's before and not after? Now is your time to tell us. Well, legally speaking, Your Honor... Assume we're going to adopt that definition. What's wrong? Okay. Well, if Your Honor is saying that the court... If the court were to adopt a definition in connection with the issuance of a task order that excludes... Conduct afterwards. Conduct afterwards. But I think, I mean, that resolves this particular issue, I think. So what's wrong with that? Well, I think what's wrong... Sorry, Your Honor. What I'm trying to say is that the direct and causal language, which defines in connection with, does not... is not restricted to pre-award activity, pre-award protests. The question is, what did it mean? When you say direct and causal, what did that mean? In a case in which the conduct was before the issuance, right? Yes, Your Honor. That was in a case that... Well, actually, I think that was, again, one of these cases that the conduct was after, but it was, you know, trying to say the task order was invalid. But, Your Honor, I think... Yes, Your Honor, please. So, you know, what is troubling me there, and I think reflected in my colleague's questions also, about the language of the last clause of 1491 is pretty broad and in some very natural way would suggest that it would be supplier with a genuine statutory claim to supplier to the contractor would be able to bring a suit. So I don't think the other side has a textual problem with that, or at least I haven't seen one. Yet, it has the feel of being quite broad in consequence, and I assume you want to say, yes, it's very broad, but can you address that? How do we understand just how broad it is? One of the things that Mr. Kaplan said is there just aren't that many statutory rights outside 3453 that would apply, and even within 3453, you know, not that broad. So, Your Honor, to address 3453, we didn't tackle this. The court below found the interested party issue with respect to 3453 specifically. We didn't really address this because that opinion was vacated and it was not the opinion that was on appeal. I'm sorry, you have a section in your brief as an alternative. Oh, absolutely, yes. The grounds of defense is the dismissal. Yes, Your Honor, and so I'm just saying we didn't tackle the vacated opinion. But with respect to interested party, this court has absolutely made very clear that interested party, when you're talking about a procurement, requires that the protester have bid on, be a prospective bidder on the procurement in question. And I think there is no question the recipient agrees that it is neither of those, and it did not protest prior to the close of bidding. Those are the elements of a post-award, or post-award, well, those are the elements of an interested party statute. So far as the procurement was the original award or even the task order, they're absolutely not. But I think they want to say, actually, that they're not really attacking that. It's a procurement that is going to come afterwards, and that's what they think they have. They have a statutory right to participate in a way that they haven't been allowed to. Yes, Your Honor, I think that is what they are trying to say, and that is where this argument in connection with the procurement comes in, because there isn't one. There is the Sapphire procurement. That is the procurement that is at issue here. That procurement went through all the normal processes to award the contract, and that is over. The recipient is now trying to say that there is some new thing that the government is going to be procuring. There isn't. If CACI builds its own software versus buys theirs, then either or better, that cost, in one way or another, is going to be passed on to the government. Yes or no? Yes. Yes. So why is that not a sufficient government procurement of what's going to be acquired by CACI? Because there is no – the interested party status is based on a bidding period, right? The bidding period for the procurement. You have to protest, be an actual prospective bidder, and or protest before the close of bidding. Bidding is closed on the Sapphire procurement, the IDIQ contract. Bidding is closed on Task Order 1 to the extent that – So as a sort of statutory matter or regulatory, I'm not skeptical about this, but, I mean, they're repeated phone calls and emails to CACI. Please, look at our product, buy our product. That's not a bidding? No. Well, perhaps it is in sort of the colloquial sense, but we are talking about a government procurement. When this court has defined the scope of what is in connection with a procurement – They're trying to get their product procured by somebody who will pass on the cost to the government, and the government has an obligation to, on their allegations under 3453, to put pressure on or something, CACI, to see what's out there on the commercial marketplace shelf. But, Your Honor, you can't have a – the protester can't simply invent a procurement that they want the government to consider. Why is this not a procurement? If we are talking about the Sapphire procurement, again – We're talking about the implementation of the IDIQ and even perhaps the initial task order under the initial government procurement. Yes, Your Honor, and so I think we're looking at – we're sort of conflating the interested party question and the in connection with the procurement question. So, if we assume that we are talking about the Sapphire procurement, that putting an alleged violation in connection with the Sapphire procurement to be an interested party, the protester had to have bid on or been a prospective bidder on that procurement. If CACI – Your Honor, let me understand that. The question that the presiding judge has generally put to you is that there is a hypothetical additional procurement to the original procurement. So, what's happened is that CACI has won a contract and gotten a task order, right? If there is a possibility that CACI might do its 3453 obligations and conclude, oh my goodness, a recipient has a burned product that won't work. And so, therefore, they will, as a prime contractor, have a subcontract in which they will make a procurement from the recipient of these goods. And what the presiding judge is saying is the possibility of that procurement existing is the thing that is complained about. That's where the recipient wants in. They know they can't get in at the original solicitation task order level. And I think what the presiding judge is asking is does that matter for purposes of deciding whether they have standards? Should we take into account in deciding whether they have standards? And understanding that they don't have standing to complain about the original task order issue, should this possibility of an additional procurement matter? No, Your Honor, I don't think so. And why not? At best, and this has not happened, there is no allegation to this effect, at best, the recipient would be a disappointed subcontractor. And disappointed subcontractors do not have standing to bring a protest in certain limited circumstances. Accepting in certain limited circumstances. Is that under a case law? Yes, Your Honor. And again, this was something we argued in front of the court of federal claims. But I don't think it really came up here. You're looking for a case that says that? Yes, Your Honor. You're most welcome. Well, okay. Let me just take a look at it. And I apologize. I know I'm well over my time. These are the answers. Okay. So, Your Honor, I think the primary case law that we were citing, I'm looking at appendix page 189. This is our original motion to dismiss in the court of federal claims, in which we're citing a number of court of federal claims cases describing the inability of subcontractors to protest. 189 to 190. International Genomics, is that what you're... Yes, Your Honor. Blue Water and then... 189. Yes, 189. And the argument carries slightly over to 190. We haven't said that. I can't think of a case off the top of my head where this court has said that. That will be a lead for us. Understood, Your Honor. And I think there is no allegation that there is a subcontract in the offing. There is no allegation that there is a proposed subcontract of any kind. And I think even in the context of determining whether that is a new procurement, there still has to be some determination of a need that is not... a new need that is not part of the SAFIRE procurement in order for there to even be considering whether you have standing under some new... From the record we have, it looks like there isn't going to be one. It looks like PAC is developing its own system. There's nothing in the record that's shown us that they've put any subcontracts in. By the way, is the contract still under performance? Yes, Your Honor. Okay. I have a question about standing. I actually want to just... I think that Judge Toronto asked you a question, and I'm not sure I heard the answer. And so one thing your adversary was emphasizing was that, you know, the door that would be opened by finding standing here is not as wide as you might think because there has to be a statutory or regulatory provision that applies post-award. And the question was to you was, is that true that there aren't many statutory or regulatory provisions that would apply post-award like 3453 does here? And I don't think I heard you give an answer to that question. My apologies, Your Honor, and I apologize to Toronto. I certainly haven't done, you know, a survey of what those possible statutes could be, but I can certainly think of some off the top of my head. I mean, this 3453 itself encompasses a very wide range of contracts. So what are those other things that you're thinking of? I'm going to get the names wrong, but the Buy America First Act type of cases where if the government is soliciting something, think of in either the task order context or not, and the contractor is required to provide goods that are made in the U.S. Any... All group 2 contracts? Yes, Your Honor. That holds all group 2 contracts. All contracts that are designed to deal with disability people that need help. Yes, Your Honor. And frankly, I think you could get more abstract if there are contracts. The one that I was thinking of is if the government is trying to procure, for example, some kind of fire alarm and there are certain regulatory requirements for fire alarms that have to go into, you know, government facilities. What about the regulations that deal with contracting that tell you what kind of people, groups that you have to consider and you can't discriminate against various groups in your employment? Certainly, Your Honor. That whole range of everybody who's serving under the contract. Yes, Your Honor. I think that would... The door would also potentially be open for that. And I think that highlights the fact that the question about standing here cannot be directed to the statute that is identified as having been violated. The question of standing is simply, are you an interested party in the procurement that you are identifying? And I think that is the error that was made in the vacated opinion that we are not arguing, but Judge Bruegge below relied on 3453 to provide standing. And that statute does not provide a cause of action. It does not provide standing. 1491B is where we look to for standing in this court. When you're looking at Problem 1-2 of 1491, i.e., the complaint about the solicitation or complaint about the award, you can have a violation of law alleged in connection with the solicitation. Certainly, Your Honor. Absolutely. And so if it's indeed true that the current standing law was designed for purposes of Problems 1 and 2 because those are the kind of cases it was coming up with, those cases would also include something that would have fallen under the third prong. Absolutely, Your Honor. And frankly, I can't cite one to the court right off, but I am sure that there are cases in which the court's standing requirements have been applied under that third prong when there is an alleged violation in connection with a procurement. The same statute, the same interested party provisions apply. Well, I look. I couldn't find one. I mean, the notion that we would have a differing standard for standing under Problem 3 than is established for Problems 1 and 2, it seems we wouldn't be able to do that if we have a precedent that's already applied to the standard for 1 and 2 and 3. I will look. Yes, Your Honor. I guess what I'm trying to say is I am sure that a standing issue has come up. If you find a case in which this court has precedentially enforced the typical standing for Problems 1 and 2 and Problem 3 case, would you give it to us? Certainly, Your Honor. Thank you very much. Thank you very much. Oh, I'm sorry. You get to skip it. No. Due to the subcontractor, here you are. Good morning, Your Honor, and may it please the Court. I would like to follow up on some questions that you were originally asked about. Wouldn't this, the interpretation of 3453 as opening up the avenue for anyone at any time during the performance of a contract, could come in and say, wait, I have a better widget. I have a non-developmental item or I have a commercial item that I think can meet their requirements. Just to be clear, I think we've been talking about not the interpretation of 3453, but the interpretation of 1491. The merits of the 3453 obligation have not been litigated, and if this were to go back and the litigation were to proceed to the merits, there would be ample opportunity for arguments about why the 3453 duty was actually very much more limited than perhaps we were worrying about here. So it's the 1491 question, I think. But if you want to say that 3453 duty is actually very narrow, then maybe I'm not going to worry so much about opening up 1491 because it will be taken care of at the merits motions at the Swiss. So in 1491, you have to be an interested party. SECRI was a very unique case in that they were a mandatory supplier by law, so that they didn't have to submit a proposal. Here, the recipient doesn't claim it could submit a proposal, wants to submit a proposal. It just wants the ability to be a subcontractor. But it doesn't have, therefore, a direct economic interest in the original prime contract that was awarded or the task order because it wants to be a subcontractor to CACI. And in that circumstance, it's not the government generally making the determination. It's the contractor making the determination because the determination of what would be used and how they would determine it was actually set forth in the task order, which required CACI to design, develop, and implement a CV system. There was no obligation that it definitely use any particular CV software. In this case, the recipient challenges whether or not the analysis that was done was sufficient. There was an analysis done. It's in the record. And as a result of that, the recommendation by CACI was to use another non-developmental item, actually one that was owned by the government already. So what the recipient wants here is the right to have a subcontract, but that is in connection with the issuance of this task order because while the task order had the obligation to look at, for CACI, to do an analysis of the market research and do market research and then determine whether there were, in fact, commercial alternatives, then they would have done that. The government could have required them at that time. These are the alternatives we want you to look at. And then they would have a direct economic interest. But here, the recipient didn't participate in the market research, didn't participate in the procurement, and it's only years after award that they say they want to bring a protest. And if the 1491 allows that to be true, it opens up every procurement to every potential subcontractor who wants to compete for part of the work that is required of the contractor. One way of looking at it is from the self-interest of the contractor wanting to compete, and the other way of looking at it is that the recipient wants to perform as a private attorney general. So how else, let's just assume for purposes of argument, that there is a violation of 3453 going on. How will this violation be vindicated? If you live in a world where you think there should be ways in which to vindicate wrongs, and you're saying, well, we would be absent the person who is a viable potential subcontractor being able to bring the facts to light, then you almost have to rely on the whistleblower with a keytab type action. Because here, the government hasn't shown any interest in policing the situation. So I should think there are several ways that the compliance with the statutory obligation occurs. One, it occurs under the contract dispute side. A prime contractor could disagree with the government, say, wait, I priced this to subcontract for a commercial item, and you want me to develop something new, so that would be a claim. Or the government could impose that obligation saying to the contractor, we don't want you to develop something, we want you to use a commercial product or another non-developmental item. There are lots of other ways that government conduct and contractor conduct. Far from false claims act, you do have IG investigations. If a party actually has standing in a task order here, they could go to GAO with a protest, if they're otherwise an interested party. Congress could do an inquiry, which they do, to ensure that agencies are, in fact, complying. And they could ask GAO to do an audit. So there are avenues for Congress to pass a statute to ensure that the government and its contractors are meeting the obligations. Is your point that there's nothing in that statute that expressly says what the consequences of a violation of 3453? So our point is it doesn't independently provide a protest right, but that's under 1491. And the requirement is that to the maximum extent practical, you do market research to see whether there is commercial or non-development products and implement them to the maximum extent practical. So that's a standard that would have to be evaluated in any particular case. Thank you so much. Thank you. We will have some rebuttals. First, just one very discreet point on the question of cases addressing. Well, I'm going to get to that. But the first thing is just a very discreet point on the task order bar, which is there are three cases favorably cited in SRA itself that involved actions that took place after a task order. That would be Global Computer, Unisys, and Distributed Solutions. On the subcontractor standing issue, the disappointed subcontractor, to the extent that principle exists in the case law, the government is misapplying it here. If you look at Distributed Solutions, what Distributed Solutions makes clear is that, theoretically, you could have called the protester in Distributed Solutions a disappointed subcontractor because they sought to get subcontracts from the contractor. They actually submitted at stage one or stage six or whatever. They submitted a bid. It was the original RFI, and then that got canceled. In Distributed Solutions, they pinned the fact that they had actually submitted a bid. Or responded to the RFI, I believe, was what happened. But yes. And that established that a procurement existed before the granting of the subcontract. Right. But theoretically, the bottom line point in Distributed Solutions was they were an interested party and it was in connection with the procurement because they had the government conducted the type of procurement that they said that they were legally obligated to. In other words, if their claim was correct, they would have been a direct competitor. And similarly, the same thing is true here. They say that our only beef is that we wanted to be a subcontractor. Well, that's not true. If the government did what they were supposed to and they monitored, one way that our economic interests could have been vindicated is ordering their contractor to do a subcontract. Another is they could have just licensed us directly. In the task order. Well, yes. In the course of performing the task order, but also in the course of performing the contract, they could have instructed their contractor to procure them. We've been talking, I think, several terms here about whether it's only the SAFIRE contract and task orders under it that constitute a cognizable procurement or whether the later stage purchases by the contractor purchases, maybe we just call them subcontractors. We've been talking about those as subcontract. I don't know if that's the same as buying something from a supplier. Is that latter stage a government procurement within 1491, or are you saying that that stage is in connection with the original procurement? I think it's the former, Your Honor, because the government has never come to grips in this case. We've heard them say this over and over. The procurement is over. The procurement isn't over. The definition of procurement in distributed solutions says all stage of the process of acquiring a process all the way through contract completion or closeout. We're miles away from that. The possibility of a subcontract to you from CAPI would be in connection with the procurement. Absolutely. It's contemplated. Absolutely. And again, Your Honor, just to be clear, that is one avenue. But they can also, in connection with this procurement, license us directly and just say, hey, CAPI, integrate them. Okay. So why do you think that subcontractors can be interested partners with a withstanding, and I guess, cause of action under 1491? The only reason I'm hesitating, I think the answer is yes, Your Honor, but the only reason I'm hesitating, the answer is yes, but the key point here is the reason we have standing is because the type of provision that we are bringing this under, our economic injury is direct. It is not derivative of, for example, say you have a case where a subcontractor, a prospective subcontractor and a contractor, a contractor bids on a contract, and the subcontractor, they said, if we do this, we're going to subcontract out this work. And then the contractor doesn't get the contract. And then the only person who protests is the subcontractor. That particular instance might be indirect. The court might conclude that person is an interested party because their interest is entirely derivative. Is the scenario you just described what occurred in the CFC cases cited at appendix 189 to 90 or not? I don't recall which cases we're talking about at 189 to 90, but I think, yeah. We spent some time waiting for identification of some subcontractor cases, and that's when it came back. Essentially, I can't remember. I know that that's one of the scenarios. I can't remember if it's every single one of them. But what I know for a fact is that what those cases are not about is what we're talking about here, which is a statute under which we would be competing directly, where that is about procuring commercial items and where the economic interest is direct, because we would be the commercial item provider. And that is entirely different from any case that is ever talked about disappointed subcontractor. And it's like distributed solutions where, again, the claim was, if you had conducted the type of procurement you were supposed to conduct, we would have been a direct competitor. In this context, the fact that the government theoretically could have ordered CACI to procure us as a subcontract is really beside the point because they also could have procured us directly. And we are, in a sense, for that purpose, directly competing. What you have is, are you going to procure a commercial item, in which case we would get the work or we would get the benefit of the government's procurement, acquisition, or are you going to develop it? And so we're on the same level as CACI for purposes of that. We are not a disappointed subcontractor to CACI. There's a direct economic interest at stake there. It would be true of anybody who's in your similar position, who has a product that could be supplied into the performance of an overall contract. Sure. Or you were unable to be a bidder for the whole contract. Absolutely. The size of the door you're opening hasn't narrowed. Well, yes. And so let's get to that. Fairly quickly. Understood, Your Honor. The key point, we understand that, Your Honor, it hasn't seen this, but one reason why this seems a bit ephemeral is because the government didn't do what they were supposed to do here. They did not have a systematic process for evaluating commercial items at the outset. We had to go to them. They rope-a-doped us for a year and a half saying, oh, we're going to do it, we're not going to do it, and then they entered into a bailment agreement with us. It was very haphazard. But the government's haphazard process can't be allowed to predomit the plain language of the statutes. Because look at what we're talking about on the flip side, Your Honor. Which plain language are you talking about? I'm talking about the plain language of 1491 and I'm talking about the plain language of 3453. The plain language is that an interested party can bring forth the violation of law. Absolutely. And look what they're trying to do. How about a person walking in off the street who learns about all this? Should they be able to come to the court of federal claims? Well, they have to have, as Your Honor said, a credible claim that it's practical to purchase their commercial item and have development. But it has to be someone who's sort of in the heat. Yes, absolutely. And again, Your Honor, the flip side of this is you heard when my friend was trying to explain what the avenue was in response to Judge Clevenger's question, how this could be enforced, all you heard was the kind of thing you could hear about any statute. Oh, well, congressional oversight. Right, but that was an answer to a question essentially about a private attorney general approach. Yes. That's not what we're talking about. Can I just add before you sit down? So some of what I think you've been saying and certainly what I've been thinking is that for purposes of applying the interested party in connection with Peace of 1491, I want to look at the statute that's being alleged to be violated, 3453. And then I think, well, the predecessor case or an important predecessor case of Weeks Marine, AFGE case, said we don't think this interested party language is like APA aggrieved party language. The aggrieved party language is what – if you can correct me about all this – is what I think led to the usual zone of interest test of the statute whose violation is alleged. And we think 1491's interested party clause is narrower than that. Are you asking us to do something essentially inconsistent with that interpretation of the interested party? No, Your Honor. It is narrower than the APA standing. But you have to be – in the sense that you have to have a direct competitive – a direct economic interest, you have to be a prospective offeror if the government does what they are supposed to do. But we unquestionably are. We are the offeror of this commercial item if the government does what they're supposed to do and ensures to the maximum extent practical that commercial items would be procured. And the flip side of what they're trying to do is preclude all enforcement of this provision that Congress have painstakingly entered. And if that's what Congress had done in plain language, if they included this provision and made it essentially hortatory by not giving the court jurisdiction, well, that would be what they did. But that isn't what they did. They gave the court a broad grant of jurisdiction in 1491. They enacted Section 3453 in plain terms. And this protest should, therefore, be allowed to proceed. We thank the court for this. Thank you very much, Mr. Kaufman. Thank you. Thank you to all counsel. This case is submitted.